1

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    DISTRICT OF NEVADA

9    CHESTER L. MALLORY AND SUSAN A.
     OLIVER, as TRUSTEES OF THE                    Case No.  3:06-cv-00487-ECR-RAM
10   MALLORY/ OLIVER LIVING TRUST
     DATED APRIL 22, 1994; CHESTER L.
11   MALLORY, an individual; and SUSAN A.
     OLIVER, an individual,
12                                                 **FINDINGS OF FACT, CONCLUSIONS OF**
                       Plaintiffs,                 **LAW and ORDER FOR JUDGMENT**
13
             vs.
14
     GEORGE CHANDLER, an individual;
15   JANET CHANDLER, an individual; GARY
     CHANDLER, an individual; and COOK
16   INDUSTRIES, a Nevada Corporation; and
     DOES I-X,
17
                       Defendants.
18   _____/

19           Having reviewed the papers and pleadings on file herein and having considered

20   the presentation of Plaintiffs on September 28, 2009 in the above-referenced matter, the

21   Court hereby enters its Findings of Fact, Conclusions of Law and Order for Judgment as

22   follows:

23                                     **FINDINGS OF FACT**

24   **I.  Factual Background**

25           Plaintiffs, Chester L. Mallory and Susan A. Oliver, as Trustees of the

26   Mallory/Oliver Living Trust dated April 22, 1994 (the "Mallory/Oliver Living Trust"),

27   Chester L. "Chet" Mallory, and Susan A. Oliver (the Mallory/Oliver Living Trust, Chet

28
                                               1
     4623262_2

Mallory, and Susan Oliver are collectively referred to herein as the "Plaintiffs") filed suit against the Defendants, George Chandler, Janet Chandler, Gary Chandler, and Cook Industries (collectively referred to herein as the "Defendants"), on August 16, 2006 in the Second Judicial District Court of the State of Nevada.  Plaintiffs stated claims for relief for, amongst other things, common law fraud and RICO Act violations. Defendants removed the case to this Court on September 6, 2006.

The parties submitted an Amended Stipulated Discovery Plan and Scheduling Order on December 15, 2006 and proceeded with discovery in this matter.  An amended scheduling order was entered on June 11, 2007 to permit additional time for discovery and to extend other applicable deadlines.  Plaintiffs were subsequently granted leave to file a First Amended Complaint, which they filed on November 14, 2007.

**II.    Defendants' Failure to Appear and Defend**

Counsel for the Defendants filed his first Motion to Withdraw on February 26, 2008.  Defendants' counsel claimed that communication with his clients had broken-down, rendering it impossible for him to continue representation.  By way of a March 10, 2008 order, this Court denied counsel's motion to withdraw, without prejudice, concluding that because counsel represented a corporation (Cook Industries), a substitution of attorneys would have to take place before withdrawal would be permitted.  [*See* Docket No. 98]  Defendants' counsel subsequently assumed the defense of this matter and proceeded to file a motion for summary judgment, which the Plaintiffs duly opposed.

On January 23, 2009, Defendants' counsel filed a second motion requesting permission to withdraw as counsel. [*See* Docket No. 132]  After hearing arguments of counsel regarding the second motion to withdraw, this Court permitted Defendants' counsel to withdraw from the case and ordered that the Defendants retain new counsel no later than March 25, 2009.  [*See* Docket No. 139]   No attorney having made an appearance on behalf of the Defendants by the March 25, 2009 deadline, this Court

4623262_2

1    issued an Order to Show Cause, directing the Defendants to appear and show cause why

2    a default should not be entered against them for failure to appear and defend.  [*See*

3    Docket No. 146].

4         A hearing on the show cause order was scheduled for April 15, 2009.  At no time

5    prior to the hearing did any of the Defendants contact either Plaintiffs' counsel or the

6    Court to request time to respond to the order to show cause or to request to re-schedule

7    the show cause hearing.  On April 15, 2009, the Defendants failed to appear before the

8    Court to show cause why default should not be entered.   Accordingly, this Court

9    directed the Clerk to enter a default against the Defendants.  [*See* Docket No. 148].

10        In light of the foregoing, the Clerk entered a default against the Defendants on

11   April 15, 2009 for failure to appear or otherwise defend against the lawsuit.

12   Subsequently, Plaintiffs set a  hearing to request entry of a default judgment against the

13   Defendants.  On July 8, 2009, Plaintiffs appeared before the Magistrate Judge and set

14   forth the elements of each one of their claims and provided arguments as to why a

15   default judgment should be entered.  Plaintiffs also submitted evidence to this Court

16   establishing their actual damages at $4,214,260.80.  The Defendants did not appear at

17   the hearing to offer any evidence or testimony in opposition to Plaintiffs' proof of their

18   claims and damages.  The Magistrate Judge subsequently directed Plaintiffs' counsel to

19   provide supplemental briefing regarding the propriety of awarding Plaintiffs' treble

20   damages on a default judgment.  [*See* Docket No. 159]

21        On September 28, 2009, Plaintiffs appeared before this Court and set forth the

22   elements of each one of their claims and provided arguments in support of entry of a

23   default judgment against the Defendants.  As with the prior hearing, the Defendants did

24   not appear to offer any evidence or testimony in opposition to Plaintiffs' proof of their

25   claims and damages.

26   ///

27   ///

28
                                        3

# CONCLUSIONS OF LAW

## III.  Entry of a Default Judgment Against Defendants Is Appropriate

Rule 55 of the Federal Rules of Civil Procedure vests the Court with discretion to determine whether default judgment should be entered.  *See* Fed.R.Civ.P. 55(b)(2). In exercising its discretion, the Court reviews a variety of criteria, including whether or not the Court has subject matter jurisdiction over the case and personal jurisdiction over the parties, and whether the allegations of the complaint state a cause of action.  *See, e.g., Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir.1997) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir.1986)); *Bruce v. Wal-Mart Stores, Inc.*, 699 F. Supp. 905, 906 (N.D.Ga.1988) ("In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint.").

A default constitutes admission of all well-pleaded factual allegations contained in the complaint, with the exception of issues relating to damages.  *Greyhound Exhibit Group, Inc. v. ELUL Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *Alan Neuman Productions v. Albright*, 862 F.2d 1388 (9th Cir.), *cert. denied*, 493 U.S. 858 (1989) (upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be re-litigated on appeal).  With respect to amount of damages, FRCP 55(b)(1) provides for the entry of a default judgment by the Court when the plaintiff's claim does not involve "a sum certain or a sum that can be made certain by computation."  In such instances, the Court may conduct a hearing to determine the amount of damages, as it did in this case.

Here, and as a result of Defendants' default on April 15, 2009, this Court accepts as true all of the well-pleaded factual allegations in the Plaintiffs' First Amended

4

Complaint, including those regarding Plaintiffs' claims for common law fraud and violations of the RICO statutes. Moreover, the Plaintiffs submitted evidence at the prove-up hearing on July 8, 2009 and on September 28, 2009 to support their actual damages sustained as a result of the Defendants' actions. The evidence regarding damages submitted by the Plaintiffs was not opposed by the Defendants.

This Court shall therefore enter judgment against the Defendants in the amount established by the Plaintiffs at the July 8, 2009 and September 28, 2009 hearings. In addition, as set forth below, Plaintiffs' actual damages shall be trebled pursuant to the provisions of the RICO statutes.

**IV. The Defendants' Conduct Violated Federal RICO Statutes**

Federal RICO statutes provide, in relevant part, that

> "it is unlawful for any person that has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use, invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or establishment or operation of, any enterprise which is engaged in, or the activities of which effect, interstate or foreign commerce."

18 U.S.C. § 1962(a). In light of the Defendants' default, and pursuant to the evidence submitted to this Court by the Plaintiffs on July 8, 2009, this Court finds that the Plaintiffs established that the Defendants' violated the Federal RICO statutes and finds in favor of the Plaintiffs on their third, fourth, and fifth claims for relief, as set forth in the First Amended Complaint.

In opposing a motion for summary judgment filed by the Defendants, the Plaintiffs set forth a detailed factual background describing the pattern of racketeering activity engaged in by the Defendants before, during and after the parties' business relationship. [*See* Docket No. 124] This Court hereby fully incorporates, by this reference, the statement of facts set forth in the Plaintiffs' Opposition to the Defendants' Motion for Summary Judgment.

This Court finds that the Defendants obtained money, property, and signatures under false pretenses, which proximately caused damage to the Plaintiffs. The evidence

4623262_2

established that, during the course of the parties' relationship, the Plaintiffs injected several million dollars worth of working capital into their own company for purposes of developing an outdoor kitchen product as a result of Defendants' racketeering activities. The Defendants represented to the Plaintiffs that they were unable to obtain a line of credit necessary to market the outdoor kitchen product, which would in turn result in sales and profits for all parties.  Because the Plaintiffs felt fully invested in the Defendants' sale of the outdoor kitchen product, the Plaintiffs further agreed to guarantee the Defendants' line of credit at First National Bank of Nevada for $500,000.00.   This Court finds that the Defendants' acquisition of the Plaintiffs' guarantee on a line of credit that the Defendants used for their personal benefit with no intention of paying off the credit line constituted false pretenses. In sum, this Court finds that the Plaintiffs reasonably relied upon and were therefore induced by Defendants' fraudulent actions and representations to spend $4,214,260.80 in financing the production of the outdoor kitchen products.

This Court further finds that the Defendants obtained property and/or money from the Plaintiffs under false pretenses when they convinced Gilbert DeWolf to participate in their scheme to obtain 20 outdoor kitchens without paying for the product. The Defendants used Mr. DeWolf to secure delivery of the 20 outdoor kitchens and then instructed him to allege that the units were defective and to "chargeback" the Plaintiffs' company for 10 of those units.  Mr. DeWolf did so and the Plaintiffs had to refund the credit card company the money because of Mr. DeWolf's misrepresentations. The Defendants subsequently sold every one of the outdoor kitchens that they obtained under false pretenses.

In addition, this Court finds that the Plaintiffs established that the Defendants used successive entities to steal from investors and partners, prior to and after the Plaintiffs' involvement with the Defendants.  Each of these prior investors were misled by the Defendants and thereby invested money or labor and product in the Defendants'

respective alleged businesses when the Defendants never had any intention of repaying them.  Notably, one such scheme led to a separate patent infringement action against the Defendants.  The Court further finds that the Defendants also used the United States mail system and wires to effectuate their scheme, resulting in the commission of predicate RICO acts.

Accordingly, the evidence presented by the Plaintiffs conclusively established that (i) the Plaintiffs' investment of approximately $4,214,260.80 in the manufacturing of the outdoor kitchens inured to the benefit of the Defendants; (ii) the Defendants' conduct such as their default on the line of credit was part of a pattern of racketeering activity; (iii)  the Defendants' racketeering activities were causally connected; and (iv) those activities constituted long-term criminal activity.

**V.  An Award of Treble Damages Is Justified**

The RICO statutes further provide that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

Several courts of appeals have affirmed an award of treble damages pursuant to RICO in a default judgment action.  *See D'Orange v. Feely*, 101 F.3d 1393 (2d Cir. 1996) (appeals court affirmed district court's denial of motion to set aside entry of default and award of treble damages for default judgment pursuant to RICO); *Jones v. Phipps*, 39 F.3d 158, 161 (7th Cir. 2004) (denying defendant's motion to vacate a default judgment awarding plaintiff $932,974.20 in damages, an amount representing assess damages that were trebled pursuant to the RICO statute).

This Court finds that the Plaintiffs have consistently maintained throughout these proceedings that the Defendants' actions have caused the Plaintiffs actual financial harm because of their financing of the production of the outdoor kitchen products and guarantee of the Defendants' line of credit that was all induced by the Defendants' racketeering activity.  Moreover, this Court finds that the Plaintiffs have proven actual

7

damages in the amount of $4,214,260.80.  Further, this Court finds that the Plaintiffs' actual damages should be trebled pursuant to the provisions of the RICO statutes and a default judgment should be entered in favor of the Plaintiffs, and against the Defendants, for $12,642,782.40.

### ORDER FOR ENTRY OF JUDGMENT

In light of the foregoing, the Clerk of the Court is hereby ordered to: (1) enter judgment in favor of the Plaintiffs and against the Defendants in the above-referenced matter; (2) award Plaintiffs actual damages in the amount of $4,214,260.80, to be trebled pursuant to 18 U.S.C. 1964(c), for a total judgment of $12,642,782.40; (3) include in the judgment an award of reasonable attorney's fees, pursuant to the Declaration of Attorney Brad M. Johnston, in the amount of $184,035.75.

DATED: This 30th September, 2009.


**IT IS SO ORDERED**

_____
United States District Judge

Submitted by

_____/s/ Tamara Jankovic_____
Timothy A. Lukas, Esq.
Brad M. Johnston, Esq.
Tamara Jankovic, Esq.
Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

8

4623262_2